[No. B210116. Second Dist., Div. One. Mar. 2, 2010.]

ADVANCED CHOICES, INC., Plaintiff and Appellant, v.
STATE DEPARTMENT OF HEALTH SERVICES, Defendant and
Respondent.

COUNSEL

The Altman Law Group, Bryan C. Altman and Koren W. Wong-Ervin for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Douglas M. Press, Assistant Attorney General, Richard T. Waldow and Gregory M. Cribbs, Deputy Attorneys General, for Defendant and Respondent.

OPINION

CHANEY, J.—Plaintiff Advanced Choices, Inc. (Advanced Choices), submitted bills to and received remittances paid through the Medi-Cal program, which is administered by defendant State Department of Health Services (the Department). Advanced Choices was not a Medi-Cal provider and was ineligible to participate in the program. When the Department discovered the facts, it demanded return of $1,454,840.10. Advanced Choices sought formal proceedings, which were held before an administrative law judge of the Department's Office of Administrative Hearings and Appeals (OAHA). The OAHA issued a tentative ruling, which the Department adopted, affirming the Department's action. Advanced Choices then filed a petition for writ of mandate in the superior court; the court denied the petition.

Advanced Choices now appeals, contending it is entitled to retain the $1,454,849.10 under several theories in equity. We shall affirm.

## BACKGROUND

*Statutory and Regulatory Framework*

California participates in Medicaid, the federal medical assistance program (42 U.S.C. § 1396 et seq.), through the Medi-Cal program. (Welf. & Inst. Code, §§ 10720 et seq., 14000 et seq.[1]; Cal. Code Regs., tit. 22, § 51000 et seq.) The program provides eligible persons (beneficiaries) with financial assistance to help them obtain medical services.

To participate in the program and obtain reimbursement for services provided, a medical professional must apply to become a "provider" and be enrolled in the program, receiving a provider number. A "provider" of Medi-Cal services is an "individual, partnership, group, association, corporation, institution, or entity, and [its] officers, directors, owners, managing employees, or agents . . . , that provides services, goods, supplies, or merchandise, directly or indirectly, to a Medi-Cal beneficiary and that has been enrolled in the Medi-Cal program." (§ 14043.1, subd. (*o*); see Cal. Code Regs., tit. 22, §§ 51000.7, 51000.20.) An "applicant" for a provider number is any "individual, partnership, group, association, corporation, institution, or entity, and the officers, directors, owners, managing employees, or agents thereof, that apply to the department for enrollment as a provider in the Medi-Cal program." (§ 14043.1, subd. (b).) The Department "shall not enroll any applicant that has been convicted of a felony or misdemeanor involving fraud or abuse in any government program . . . within the previous 10 years." (§ 14043.36, subd. (a).)

 "No provider shall submit claims to the Medi-Cal program using any provider number other than that issued to the provider by the Department." (Cal. Code Regs., tit. 22, § 51501, subd. (d).) The Department is mandated to recover payments made for services rendered by persons who did not meet the standards for participation in Medi-Cal when the Medi-Cal billings and reimbursements were made. (Cal. Code Regs., tit. 22, § 51458.1, subd. (a).)

*Procedural History*

*The discipline*

Sabina Rasulov, Advanced Choices's sole owner and shareholder, was convicted of welfare fraud in 1997, rendering both her and Advanced Choices ineligible to become Medi-Cal providers until 2007. (§ 14043.36, subd. (a).)

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

In 2003, Rasulov purchased Hawaii Pharmacy from H.K.T. Corporation (HKT). As part of the sale, HKT gave Rasulov a "Power of Attorney," by which, "to the full extent of its power legally to do so," it purported to appoint Rasulov its "true and lawful attorney . . . to operate and conduct the business of the Pharmacy . . . under the Pharmacy's current . . . Medi-Cal provider number . . . ." Rasulov operated the pharmacy on her own behalf through Advanced Choices. Advanced Choices, using HKT's provider number, submitted bills to and received remittances from the Medi-Cal program beginning at least as of February 2, 2004. It is undisputed that HKT had no connection with the pharmacy after the sale.

On February 19, 2004, Advanced Choices submitted an application to the Department for enrollment as a Medi-Cal pharmacy provider. An agreement that accompanied the application provided that Medi-Cal provider numbers are not assignable. The application was denied in December 2004 because of Rasulov's welfare fraud conviction. The denial was upheld on administrative appeal and no further appeal was taken on the issue.

In June 2005, after an audit, the Department notified Advanced Choices it was required to repay $1,454,840.10 it had received through Medi-Cal since February 2, 2004.

### Advanced Choices's administrative appeal

Advanced Choices requested a formal administrative hearing to challenge the audit findings and request for repayment. Formal proceedings were held in May 2006 before the OAHA.

At the administrative hearing, the Department contended: Rasulov had been the manager of another retail pharmacy, Valley Home Care Pharmacy (VHC), that had submitted claims to the Medi-Cal program under a Medi-Cal provider number assigned to it pursuant to a power of attorney executed by a former owner. Rasulov was aware, prior to the submission of the instant application, that the Department had demanded repayment by VHC of money paid to it for claims submitted under the assigned provider number. Rasulov had read the provider enrollment agreement, paragraph 33, which states that a provider number is not assignable. At the time she submitted the application, Rasulov was aware that a Medi-Cal provider number is not assignable. Rasulov submitted claims to Medi-Cal knowing she had no valid provider number and her use of HKT's provider number was improper.

Rasulov argued she believed in good faith that the power of attorney issued by HKT allowed her to bill Medi-Cal. She argued the Department should be equitably estopped from recouping the $1,454,840.10 because it had known

all along that she was using another's provider number, as was customary to avoid interruption in services, yet had made no protest.

The administrative law judge found Rasulov's arguments to be unpersuasive, stating in her proposed decision, "This chair simply does not believe that this Applicant was so totally lacking in knowledge of Medi-Cal requirements that she could honestly believe you could bill a federal-statute funded program for in excess of $1,454,840 without the proper billing credential. [¶] Applicant has numerous licenses and experience in the health care arena. She had hands-on personal knowledge of VHC's situation, a pharmacy similarly charged with billing without a valid provider number, resulting in the State's demand for repayment. [¶] Applicant read the Medi-Cal Application. It is most clear about a provider number not being a property right and not being assignable. [¶] This tribunal cannot accept: 'I didn't know.' Actual knowledge was shown."

The administrative law judge further found that "the Department did not have th[e] facts of payment until the actual review of Applicant's enrollment request. [¶] . . . Applicant proceeded to act before the Department's review of her application." "[T]here was no credible evidence that the Department had in any manner misled Applicant into thinking she was entitled to act as a Medi-Cal provider without a number. In fact, it was the Applicant who had the knowledge from her prior involvement with VHC that billing Medi-Cal and accepting payments without a valid provider number would result in a demand from the State for repayment. [¶] It is found that the Department did not mislead Applicant and that Applicant had no right to believe she could act as a Medi-Cal provider without the proper credential to do so." "All of the available evidence supports the position that Applicant was well aware of the illegality of her conduct."

The administrative judge sustained the Department's demand for recovery of overpayment.

The OAHA's proposed decision was adopted as the Department's final decision in January 2007. Advanced Choices's petition for reconsideration was denied.

### *Advanced Choices's petition for writ of mandate*

Advanced Choices then filed a petition for peremptory writ of mandate in the superior court, contending the Department's decision to uphold its audit findings constituted an abuse of discretion because (1) Rasulov reasonably

believed she had received from HKT proper authority to bill Medi-Cal under its provider number; (2) she was entitled to use HKT's provider number because she received it by "power of attorney," not by "assignment"; (3) no evidence supported the OAHA's finding that she knew using another's provider number was illegal; (4) the Department knew she was using HKT's provider number and tacitly permitted her to do so; (5) the Department's decision permits the Department to be "unjustly enriched and to benefit from a windfall of profit"; and (6) she did not intend any concealment or deceit. Advanced Choices again argued the Department should be equitably estopped from demanding repayment of the $1,454,840.10.

The Department's responsive points and authorities asserted: Rasulov was not entitled to HKT's provider number, her reliance on the power of attorney was unreasonable, and no basis exists in equity to vacate the administrative decision. She was not entitled to relief under the doctrine of equitable estoppel because the Department did not know until it conducted the audit that she was submitting claims fraudulently, nothing it did misled her, and she was, in fact, aware that Medi-Cal numbers were not assignable and that submitting claims under another's number, even under the purported authority of a power of attorney, was improper. Citing to the administrative record, the Department asserted Rasulov admitted that she had read and understood the Medi-Cal application, including the paragraph on nonassignability ("paragraph 33"), that she was the manager of a pharmacy, and that she had previously been involved in dealings with the Department on the exact same issue. The Department further argued that equitable estoppel could not be applied against a government agency where to do so would nullify a strong rule of public policy, such as that found in the Legislature's prescription of requirements for eligibility to participate in the Medi-Cal program.

In reply, Advanced Choices argued that though the Department might not know instantaneously whether claims had been submitted under borrowed provider numbers,[2] "for the Department not to be aware of such activity for the better part of a year and beyond is frankly unbelievable. To accept the Department's statement in this regard is to permit the Department to stick its collective head in the sand and plead ignorance when problems arise for which the Department is and should be ultimately responsible." Advanced Choices also argued that no contention had been made that the services it provided to Medi-Cal beneficiaries were not medically necessary. On the contrary, the services furthered the goals of the Medi-Cal program, and to permit the Department to recoup its payment for them would unjustly enrich it.

---

[2] The Department did not receive or process claims for payment submitted to the Medi-Cal program, directly, but through a third party, Electronic Data Systems, a private entity that receives and processes the claims electronically.

*The trial court's tentative ruling and judgment*

On May 21, 2008, the trial court issued a tentative ruling denying Advanced Choices's petition. Regarding Advanced Choices's argument that it reasonably relied on the HKT power of attorney to bill Medi-Cal under HKT's provider number, the court found: "The law does not permit a non-provider to seek Medi-Cal payments and there is no equitable defense of 'reasonable reliance.'

"Advanced may be making an argument of promissory estoppel/detrimental reliance since DHS's relationship with providers is essentially one of contract. . . . [¶] Advanced may be able to show that Rasulov relied on the Power of Attorney, and that it has sustained damage, but it cannot show that DHS made any promise on which Rasulov could rely. [¶] To the contrary, the Agreement that accompanies a Medi-Cal Pharmacy Provider Application expressly provides in paragraph 33 that Medi-Cal provider numbers are not assignable: 'Provider agrees that it has no property right in or to its status as a Provider in the Medi-Cal program or in or to the provider number(s) assigned to it, and that Provider may not assign its provider number, or any rights and obligations it has under this Agreement.['] [Citation.] [Rasulov] admitted that she signed and read the Agreement [citation] and understood paragraph 33 of the Agreement regarding non-assignability. [Citation.] [¶] . . . [¶]

"Advanced also argues that DHS had to know that it was operating Hawaii Pharmacy and submitting Medi-Cal claims while the application was pending. Assuming that it did know both facts, this collective knowledge by DHS employees does not constitute a promise of any kind. Moreover, the knowledge does not mean that DHS knew that no one at Hawaii Pharmacy had a Medi-Cal number and that Advanced [Choices] was using an improper number.

"Thus, Advance[d] cannot show promissory estoppel/detrimental reliance against DHS even if [Rasulov] did act in good faith. Of course, the ALJ [administrative law judge] found that she did not. The ALJ concluded that Advanced's claim of good faith was not believable given that [Rasulov] (1) . . . read and understood that Medi-Cal provider numbers were not assignable; and (2) had been the manager of Valley Care Pharmacy that engaged in a virtually identical unlawful practice.

"The court agrees with Advanced that the record does not contain direct evidence that [Rasulov] knew that Valley Health Care attempted and was denied the ability to collect Medi-Cal payments for the use of a power of attorney from its seller (although [Rasulov's] status as office manager of that business suggests that she would have known). But there is still substantial evidence to support the ALJ's determination that she knew Advanced could not use the seller's provider number. This evidence includes [Rasulov's] several licenses and previous experience in the health care field, her understanding of the Medi-Cal application, her status as office manager of Valley Care, and her knowledge that Valley Care had been denied a provider application. As a result, the ALJ's conclusion—[Rasulov] was not credible in claiming ignorance that she could not use a seller's provider number—was based on substantial evidence."

The court later entered judgment adopting the tentative ruling.

## DISCUSSION

### I

*Standard of Review*

A trial court may issue a writ of administrative mandate if an agency has (1) acted in excess of its jurisdiction, (2) deprived the petitioner of a fair hearing, or (3) committed a prejudicial abuse of discretion. (Code Civ. Proc., § 1094.5, subd. (b).) "Abuse of discretion is established if the [agency] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (*Ibid.*) The Department's decision is evaluated by the trial court under the substantial evidence test. (*Pacific Coast Medical Enterprises v. Department of Benefit Payments* (1983) 140 Cal.App.3d 197, 208 [189 Cal.Rptr. 558].) Our task is to determine whether the Department's findings, not the trial court's findings, are supported by substantial evidence. (*Id.* at pp. 208–209.)

Advanced Choices bears the burden of pleading and proving facts upon which its petition is based (*Riverside Sheriff's Assn. v. County of Riverside* (2003) 106 Cal.App.4th 1285, 1289 [131 Cal.Rptr.2d 454]) and of affirmatively demonstrating trial court error (*Pacific Gas & Electric Co. v. Department of Water Resources* (2003) 112 Cal.App.4th 477, 491 [5 Cal.Rptr.3d 283]).

---

*Record on Appeal*

With Advanced Choices's burden in mind, we preliminarily take a moment to address the state of the record on appeal. "If an appellant intends to raise any issue that requires consideration of the record of an administrative proceeding that was admitted in evidence, refused, or lodged in the superior court," the record on appeal must contain the administrative record, which appellant must request be transmitted to the reviewing court. (Cal. Rules of Court, rules 8.120(a)(2), 8.121(b)(2).) Advanced Choices did not designate the administrative record as part of the record on appeal or request that it be transmitted to this court. We presume, then, that Advanced Choices does not intend "to raise any issue that requires consideration of the record of an administrative proceeding." In the main, this presumption is borne out, as Advanced Choices makes no citation to the administrative record, advancing mostly legal arguments on undisputed facts. To the extent this is so, the record suffices. But to the extent that Advanced Choices challenges the administrative law judge's factual findings or the trial court's review of those findings, the record is inadequate to support appellant's efforts. And new factual assertions made by Advanced Choices must be ignored.

## II

Advanced Choices contends (1) the power of attorney from HKT permitted it to use HKT's provider number; (2) it reasonably relied on the customary practice, historically permitted by the Department, of transferring provider numbers by power of attorney; (3) the Department tacitly consented to its use of HKT's provider number; (4) the Department is not entitled to a windfall profit; and (5) Advanced Choices is entitled under quantum meruit to retain the money it obtained from Medi-Cal.

*Advanced Choices could not use HKT's provider number*

██ Advanced Choices apparently argues that because the Medi-Cal provider enrollment application specifically prohibits assignment of a provider number, an entity may use another's provider number if it obtains the number by some mechanism other than assignment, such as by power of attorney. The argument is without merit.

"No provider shall submit claims to the Medi-Cal Program using any provider number other than that issued to the provider by the Department." (Cal. Code Regs., tit. 22, § 51501, subd. (d).) It does not matter how

Advanced Choices obtained the provider number issued to HKT: Because the number was not issued to Advanced Choices by the Department, Advanced Choices cannot use it.

*Advanced Choices could not reasonably rely on putative authority to use HKT's provider number*

Advanced Choices argues it reasonably relied on the power of attorney permitting it to use HKT's provider number because the "practice was both customary and historically permitted by the Department and is consistent with the requirements imposed by the Drug Enforcement Administration (DEA) with respect to dispensing of controlled substances during the interim period in which the new owner is awaiting DEA registration." It asserts this is good public policy as it allows pharmacies to continue to provide services to Medi-Cal beneficiaries during a transition in ownership. It can take the Department up to a year to process a provider application, Advanced Choices argues, which would inflict a substantial hardship—if some leeway were not granted—on pharmacies dependent on the Medi-Cal program and beneficiaries dependent on those pharmacies.

■ Advanced Choices neglects to provide any legal authority to support its contentions and, as noted above, makes no reference to the administrative record. " 'The reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment. . . . [E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' [Citation.]" (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 522–523 [85 Cal.Rptr.2d 376].) Advanced Choices's failure to cite to the administrative record waives its factual claim that it is customary for the purchaser of a pharmacy to bill Medi-Cal under the seller's provider number.

Reaching the merits, we conclude Advanced Choices fails to demonstrate error.

The trial court surmised that Advanced Choices sought to invoke the doctrine of promissory estoppel to prohibit the Department from recovering money paid through Medi-Cal. Assuming Advanced Choices seeks to do the same here, it gives no indication how the administrative law judge erred in rejecting the defense.

■ "Promissory estoppel applies whenever a 'promise which the promissor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or

forbearance' would result in an 'injustice' if the promise were not enforced. (Rest.2d Contracts, § 90, subd. (1).)" (*Lange v. TIG Ins. Co.* (1998) 68 Cal.App.4th 1179, 1185 [81 Cal.Rptr.2d 39].) "The elements of a promissory estoppel claim are '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.' [Citation.]" (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 901 [28 Cal.Rptr.3d 894].)

After reviewing the administrative record, the trial court found substantial evidence supported the administrative law judge's determination that Advanced Choices knew it could not use HKT's provider number; no evidence indicated the Department knew Advanced Choices was submitting claims using an invalid provider number; and no evidence suggested the Department misled Advanced Choices or intended that it rely on its tacit approval of the claims it had improperly submitted. The trial court found Rasulov admitted she read and understood the Medi-Cal application, including paragraph 33, which proscribes assignment of provider numbers. She admitted she was previously the manager of another pharmacy that engaged in a virtually identical unlawful practice as Hawaii Pharmacy engaged in here. She admitted she holds several licenses in the health care field and had previous experience in the field. And no evidence suggests the Department knew HKT had so disassociated itself from Hawaii Pharmacy after the sale to Rasulov that the pharmacy's continued use of HKT's provider number was improper. As a result, the trial court found that the administrative law judge's conclusion that the Department made no clear promise and Rasulov did not reasonably rely on the Department's actions was based on substantial evidence.

By choosing not to designate the administrative record, Advanced Choices waives any challenge to these findings. We must therefore conclude, as did the administrative law judge and the trial court, that Advanced Choices did not reasonably rely on HKT's power of attorney or the Department's actions when it improperly submitted claims to the Medi-Cal program.

*The Department was not unjustly enriched*

Advanced Choices argues that to allow the Department to recoup money it otherwise "would have been legally obligated" to pay would allow it to be unjustly enriched. If the Department is entitled to repayment, Advanced Choices argues, the amount repaid should be discounted to take into consideration the amount expended by Advanced Choices to pay for the medication supplied to beneficiaries.

The argument is unsupported by any authority regarding the Department's legal obligations or citation to the record as to what Advanced Choices paid or supplied to beneficiaries. Advanced Choices's unjust enrichment claim is therefore waived.

*Advanced Choices is not entitled under quantum meruit to keep the money it obtained from Medi-Cal*

Finally, Advanced Choices argues for the first time on appeal that the Department's recovery is barred under the doctrine of quantum meruit. The argument is waived (*NBS Imaging Systems, Inc. v. State Bd. of Control* (1997) 60 Cal.App.4th 328, 336–337 [70 Cal.Rptr.2d 237] [review of administrative proceedings is confined to the administrative record]; *Coalition for Student Action v. City of Fullerton* (1984) 153 Cal.App.3d 1194, 1197 [200 Cal.Rptr. 855] [failure to raise a defense before the administrative body waives the defense]; *City of Walnut Creek v. County of Contra Costa* (1980) 101 Cal.App.3d 1012, 1019–1020 [162 Cal.Rptr. 224] [a party must present all legitimate issues before the administrative tribunal]) and meritless.

■ "Quantum meruit refers to the well-established principle that 'the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered.' . . . To recover in quantum meruit, a party need not prove the existence of a contract . . . , but it must show the circumstances were such that 'the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made' . . . ." (*Huskinson & Brown v. Wolf* (2004) 32 Cal.4th 453, 458 [9 Cal.Rptr.3d 693, 84 P.3d 379], citations omitted.) " 'The measure of recovery in quantum meruit is the reasonable value of the services rendered, provided they were of direct benefit to the defendant.' " (*Maglica v. Maglica* (1998) 66 Cal.App.4th 442, 446, fn. 2 [78 Cal.Rptr.2d 101], italics omitted.) "[A] plaintiff must establish *both* that he or she was acting pursuant to either an *express or implied request* for such services from the defendant *and* that the services rendered *were intended to and did benefit* the defendant." (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 248 [119 Cal.Rptr.2d 606], original italics.)

Advanced Choices cites no evidence either that it actually provided services to Medi-Cal beneficiaries or that it did so pursuant to an express or implied request from the Department. As the administrative law judge and trial court found, the Department made no express or implied request for Advanced Choices's services. Advanced Choices fails to show that either erred.

## DISPOSITION

The judgment is affirmed.

Mallano, P. J., and Johnson, J., concurred.