Filed 12/13/13  Rubio v. JPMorgan Chase Bank CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARIA T. RUBIO, | B243639 |
| Plaintiff and Appellant, | |
| | (Los Angeles County |
| v. | Super. Ct. No. PC050207) |
| JPMORGAN CHASE BANK, N.A., etc., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen Pfahler, Judge.  Affirmed.

Law Office of Louisa Moritz and Louisa Moritz for Plaintiff and Appellant.

AlvaradoSmith, John M. Sorich, S. Christopher Yoo and Taline M. Gulesserian for Defendant and Respondent.

_____

## INTRODUCTION

Plaintiff and appellant Maria T. Rubio appeals a judgment of dismissal entered after the superior court sustained the general demurrer of defendant and respondent JPMorgan Chase Bank, N.A. (Chase) to Rubio's operative second amended complaint (complaint) without leave to amend. The complaint purports to set forth negligent misrepresentation and promissory estoppel causes of action based on Chase's alleged wrongful nonjudicial foreclosure of Rubio's real property in Sylmar. We conclude the superior court correctly sustained the demurrer and that Rubio did not meet her burden of showing there is a reasonable possibility that the defects in the complaint can be cured by amendment. Accordingly, we affirm the judgment.

## RUBIO'S FACTUAL ALLEGATIONS[1]

In June 2006, Rubio and her husband Fernando Gamez Meza obtained a $560,000 loan from Washington Mutual Bank, FA (WaMu). As collateral for the loan, they offered their Sylmar property. Rubio and Meza executed a promissory note and a deed of trust. The trustee of the deed of trust was California Reconveyance Company.

Rubio contends that Chase became WaMu's successor in interest.[2] According to Chase, WaMu was placed into receivership by the Office of Thrift Supervision. Chase further contends it purchased WaMu's interests in the promissory note and deed of trust

---

[1]  We assume the factual allegations in the complaint are true. Additionally, pursuant to Evidence Code sections 452 and 459 and Code of Civil Procedure section 430.30, subdivision (a), we take judicial notice of facts contained in the documents attached to Chase's request for judicial notice in support of its demurrer. These documents pertain to Rubio's property and were recorded in the Los Angeles County Recorder's Office. We may take judicial notice of "the fact of a document's recordation, the date the document was recorded and executed, the parties to the transaction reflected in a recorded document, and the document's legally operative language, assuming there is no genuine dispute regarding the document's authenticity." (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 265.) Rubio does not dispute the authenticity of the documents attached to Chase's request for judicial notice.

[2]  The complaint alleges that "Chase Home Finance, LLC" was the successor to WaMu. JPMorgan Chase Bank, N.A. filed responsive pleadings as a party erroneously sued as Chase Home Finance, LLC.

from the receiver pursuant to a purchase and assumption agreement. There is nothing in the record, however, regarding such an agreement.

On February 10, 2009, two documents were recorded relating to Rubio's Sylmar property. The first was an assignment of deed of trust. This document stated that the deed of trust and promissory note were assigned to LaSalle Bank NA as trustee for WaMu Mortgage Pass-Through Certificates Series 2006-AR9 Trust. The assignment was executed by Chase, as successor in interest to WaMu.[3]

The second recorded document was a notice of default and election to sell under deed of trust (notice of default). The notice of default was executed by California Reconveyance Company, as trustee of the deed of trust. It stated that Rubio and her husband defaulted on their obligations under the promissory note and that the balance due under the note was $14,543.72 as of February 6, 2009.

In May 2009 and July 2010, California Reconveyance Company recorded notices of trustee's sale. The trustee sales scheduled by these notices, however, did not take place.

On September 1, 2010, Rubio filed a Chapter 13 (11 U.S.C. §§ 1301-1330) bankruptcy petition. After filing the petition, Rubio allegedly maintained her monthly payments due under the promissory note to Chase. "On November 10, 2010 the bankruptcy was dismissed because of a technical defect and not because of any failure or inability to maintain her payments. The dismissal was made without any bar and [Rubio] was free to refile with the Bankruptcy Court without restrictions."

---

[3] The record does not indicate what interest, if any, Chase had in the promissory note and deed of trust after the assignment. It appears Chase was the loan servicer. In any case, Chase does not dispute that it is a proper defendant in this case.

3

Subsequently, Rubio received a letter from Chase dated November 17, 2010. According to Rubio, in the letter Chase "offered to help" Rubio qualify for the federal Home Affordable Modification Program (HAMP). In response to the letter, Rubio called Chase on November 23, 2010 "and requested the information packet to begin the 'evaluation process.' "[4]

On or about November 30, 2010, Chase mailed another letter to Rubio indicating that her account would now be handled by Ascension Capital Group (Ascension) and that all future communications regarding the account and payments should be directed to Ascension. Before Rubio contacted Ascension or received an information packet, however, her property was sold at a public auction on December 8, 2010.

On December 16, 2010, California Reconveyance Company, as trustee of the deed of trust, recorded a trustee's deed upon sale. This document indicated that Rancho Horizon LLC purchased Rubio's property at a trustee's sale on December 8, 2010, for $314,000. Although the trustee's deed upon sale states in its recitals a notice of sale was duly recorded, no such notice is in the record.

## ISSUES

There are three main issues on appeal:

1. Whether the superior court erroneously sustained Chase's demurrer to the complaint.

2. Whether the superior court failed to provide the specific ground or grounds for its order sustaining the demurrer and, if so, whether the judgment should be reversed as a result.

---

[4] Rubio attached a copy of the letter to her opposition to Chase's demurrer. We describe the contents of the letter in footnote 6, *post*. Because the letter was not attached to the complaint and is not the subject of a request for judicial notice, we do not consider the actual contents of the letter in reaching our conclusion that the complaint does not state facts sufficient to constitute a cause of action, but only to corroborate it. (*Roman v. County of Los Angeles* (2000) 85 Cal.App.4th 316, 324, fn. 4.) We do, however, consider the contents of the letter in our analysis of whether Rubio can amend her complaint to allege a cause of action.

3.      Whether Rubio met her burden of showing there is a reasonable possibility that the defects in her complaint can be cured by amendment.

## DISCUSSION

1.      *The Superior Court Correctly Sustained Chase's Demurrer*

      a.      *Standard of Review*

On appeal from a judgment of dismissal following a ruling sustaining a general demurrer, we determine de novo whether the complaint alleges facts sufficient to state a cause of action. (*Maxton v. Western States Metals* (2012) 203 Cal.App.4th 81, 87 (*Maxton*).) We assume the truth of the factual allegations in the complaint, liberally construed, as well as facts that can be reasonably inferred from those expressly pleaded. (*Glen Oaks Estates Homeowners Assn. v. Re/Max Premier Properties, Inc.* (2012) 203 Cal.App.4th 913, 919; *Maxton*, at p. 87.) We do not, however, accept as true plaintiff's contentions, deductions or conclusions of law. (*Maxton*, at p. 87.)

      b.      *Negligent Misrepresentation*

The first cause of action in the complaint is for negligent misrepresentation. The elements of negligent misrepresentation are "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." (*Fox v. Pollack* (1986) 181 Cal.App.3d 954, 962.) Negligent misrepresentation is a kind of fraud which gives rise to the tort action for deceit. (*Agosta v. Astor* (2004) 120 Cal.App.4th 596, 603.) It has the same elements as intentional misrepresentation except the claim does not require scienter or intent to defraud. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173.)

A cause of action for negligent misrepresentation must be pled with specificity. (*Aspiras v. Wells Fargo Bank, N.A.* (2013) 219 Cal.App.4th 948, 960 (*Aspiras*).) General and conclusory allegations are not enough. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645 (*Lazar*).) The complaint must allege facts which show how, when, where, to whom, and by what means the representations were tendered. (*Ibid.*)

5

"A plaintiff's burden in asserting a fraud claim against a corporate employer is even greater. In such a case, the plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.' " (*Lazar*, *supra*, 12 Cal.4th at p. 645.)

Here, the complaint alleges that the November 17, 2010, letter misled Rubio into "thinking she might qualify for a modification of the loan" and believing the foreclosure proceedings "would be held in abeyance" during Chase's evaluation of her loan. The complaint further alleges that "in various telephone conversations [Chase] verbally assured [Rubio] that no further foreclosure proceedings would occur." In reliance on Chase's written and verbal statements, Rubio allegedly did not stop the trustee's sale by filing another bankruptcy petition.

The complaint fails to state a claim for negligent misrepresentation because it does not include any allegations regarding an actionable misrepresentation. Generally a representation cannot be actionable unless it is about " 'past or existing facts.' " (*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells* (2000) 86 Cal.App.4th 303, 309.) Although a false promise to perform in the future can be the basis of an *intentional* misrepresentation claim, it cannot support a claim for *negligent* misrepresentation. (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158-159.) An "offer to help" or a promise to hold foreclosure proceedings in abeyance does not concern past or existing facts, and thus cannot be the basis for a negligent misrepresentation cause of action.

Further, the complaint's allegation about "various telephone conversations" falls far short of the specificity requirements for this tort. The complaint does not allege when these conversations occurred, with whom Rubio allegedly spoke, or the alleged authority of that person to bind Chase.

6

The complaint also fails to allege facts showing Rubio justifiably and detrimentally relied on any purported misrepresentations of fact by Chase. Although the November 17, 2010, letter allegedly states Chase would assist Rubio apply for assistance through HAMP, it does not state anything regarding delaying or stopping the foreclosure process before Rubio submitted an application.[5]

Moreover, the complaint does not allege that Rubio could have cured the default even if she had filed a bankruptcy petition. It is important to keep in mind that a debtor cannot discharge a mortgage debt in bankruptcy and keep her home. (*Aceves v. U.S. Bank, N.A.* (2011) 192 Cal.App.4th 218, 228-229 (*Aceves*).) " 'Rather, a Chapter 13 bankruptcy offers the debtor an opportunity to cure a mortgage delinquency over time— in essence it is a statutorily mandated payment plan—but one that requires the debtor to pay precisely the amount she would have to pay to the lender outside of bankruptcy.' " (*Id.* at p. 229.) The complaint alleges no facts indicating Rubio would or could have paid her debt over time under a bankruptcy plan.

The complaint, in short, fails to state sufficient facts to constitute a cause of action for negligent misrepresentation. The superior court therefore correctly sustained Chase's demurrer to this cause of action.

c.      *Promissory Estoppel*

The second cause of action in the complaint is for promissory estoppel. " 'The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." [Citation.]' " (*Advanced Choices, Inc. v. State Dept. of Health Services*

---

[5]      HAMP is a federal program which assists eligible borrowers who have defaulted on their mortgage payments or who are likely to default by reducing their monthly payments to sustainable levels without discharging any of the underlying debt. (*Aspiras*, *supra*, 219 Cal.App.4th at p. 952, fn. 2; see *West v. JPMorgan Chase, N.A.* (2013) 214 Cal.App.4th 780, 786-788 [describing the program]; see also *Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1055-1056 [describing a trial period plan under HAMP].)

7

(2010) 182 Cal.App.4th 1661, 1672 (*Advanced Choices*).) This cause of action is essentially the same as a breach of contract claim, except that the plaintiff's reasonable and detrimental reliance on a promise is regarded as a substitute for the consideration required for an enforceable contract. (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 904.)

Here, the complaint does not state facts indicating Chase made a clear and unambiguous promise that can be the basis for a promissory estoppel claim. Chase's alleged written "offer to help" Rubio apply for assistance through HAMP was too vague and amorphous of a statement to support a promissory estoppel claim. It was at most an invitation to Rubio to apply for a loan modification and nothing more.

Likewise, Chase's alleged oral assurances that "no further foreclosure proceedings would occur" are insufficiently " ' "clear and unambiguous in its terms." ' " (*Advanced Choices*, *supra*, 182 Cal.App.4th at p. 1672.) It is unclear whether Rubio alleges that Chase promised to *never* foreclose on her home or whether she contends Chase promised to postpone foreclosure temporarily. If the alleged postponement was temporary, Rubio does not allege how long it would be and what, if anything, would permit Chase from proceeding with a foreclosure.

"To be enforceable, a promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 770.) Chase's alleged promises do not meet this standard.

Additionally, for the reasons explained *ante*, Rubio did not justifiably and detrimentally rely on Chase's alleged promises. The complaint therefore fails to state facts sufficient to constitute a promissory estoppel cause of action.

8

The insufficiency of the complaint in this case is illustrated by contrasting its allegations with the allegations of the complaint in *Aceves*. There, a bank allegedly promised to not foreclose on a borrower's home without first engaging in negotiations with her to reinstate and modify its loan on mutually agreeable terms. (*Aceves*, *supra*, 192 Cal.App.4th at p. 226.) At the time, the borrower's Chapter 13 bankruptcy case was pending. In reliance on the bank's promise, the borrower did not to oppose the bank's motion to lift the bankruptcy stay, which was later granted by the bankruptcy court. (*Id.* at p. 223.) The bank nonetheless caused the borrower's home to be sold at a trustee's sale without engaging in negotiations with the borrower to modify her loan. (*Id.* at p. 224.)

In this case, by contrast, Rubio does not allege that Chase asked her to forego any particular course of conduct as a prerequisite to negotiations or that Chase ever promised to negotiate a loan modification. Further, Rubio did not have a bankruptcy case pending when Chase allegedly made its promises, and she does not allege that Chase knew she was considering filing a new bankruptcy petition. Thus there was no binding agreement between the parties supported by the doctrine of promissory estoppel. This case is distinguishable from *Aceves*.

2. *Rubio Waived Her Argument That the Superior Court Failed to Adequately State the Grounds for Sustaining Chase's Demurrer*

Rubio argues the superior court failed to sustain Chase's demurrer with the specificity required by Code of Civil Procedure section 472d. This statute provides: "Whenever a demurrer in any action or proceeding is sustained, the court shall include in its decision or order a statement of the specific ground or grounds upon which the decision or order is based which may be by reference to appropriate pages and paragraphs of the demurrer. [¶] The party against whom a demurrer has been sustained may waive these requirements." (Code Civ. Proc., § 472d.)

Here, the superior court's minute order sustaining Chase's demurrer stated the demurrer was sustained "for the reasons stated in the demurrer."  The court did not satisfy the requirements of Code of Civil Procedure section 472d because it did not cite to any the specific pages or paragraphs of the demurrer.  (*E. F. Hutton & Co. v. City National Bank* (1983) 149 Cal.App.3d 60, 64-65 [" 'per points and authorities in moving papers' " was insufficient].)  Rubio, however, failed to demand or point out to the court the absence of specific grounds in the minute order.  She thus waived any argument on appeal based on the court's violation of the statute.  (*Id*. at p. 65, fn. 1.)

      3.      *Rubio Has Not Met Her Burden of Showing There is a Reasonable Possibility She Can Cure the Defects in the Complaint*

When a general demurrer is sustained, the plaintiff must be given leave to amend his or her complaint when there is a reasonable possibility that the defects can be cured by amendment.  (*Maxton*, *supra*, 203 Cal.App.4th at p. 95.)  "The burden of proving such reasonable possibility is squarely on the plaintiff."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

" 'To satisfy that burden on appeal, a plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." [Citation.]  The assertion of an abstract right to amend does not satisfy this burden.' [Citation.]  The plaintiff must clearly and specifically state 'the legal basis for amendment, i.e., the elements of the cause of action,' as well as the 'factual allegations that sufficiently state all required elements of that cause of action.' " (*Maxton*, *supra*, 203 Cal.App.4th at p. 95.)

Contrary to Chase's contention, Rubio may assert a new proposed cause of action or theory of liability for the first time on appeal.  (*Grinzi v. San Diego Hospice Corp.* (2004) 120 Cal.App.4th 72, 85.)  Rubio has attached to her opening brief a proposed third amended complaint (TAC).  We conclude, however, that the TAC does not state facts sufficient to state a cause of action.

The TAC sets forth five causes of action: (1) intentional misrepresentation, (2) concealment, (3) false promise, (4) negligent misrepresentation and (5) promissory estoppel. The TAC bases all five causes of action on alleged misrepresentations in Chase's letter dated November 17, 2010, which is attached to the pleading.[6]

The fatal defect in each of the causes of action in the TAC is that Rubio could not reasonably rely on the November 17, 2010, letter when she decided not to file a new bankruptcy petition. Nowhere in the letter does Chase promise to stop or delay foreclosure proceedings. Indeed, the letter does not mention such proceedings. The letter also does not state that Chase will in fact agree to modify Rubio's loan. The letter instead simply advises Rubio that she can request an application for a loan modification. A reasonable borrower in Rubio's position would not have concluded that Chase had delayed or stopped the foreclosure proceedings based on this letter.

Apart from the TAC, Rubio has not proposed any other causes of action or theories of liability. Rubio thus failed to meet her burden of showing there is a reasonable possibility that the defects in the complaint can be cured by amendment.

---

[6] The letter states: "Chase may be able to help make your mortgage more affordable if you are having difficulty making your payments. You could be eligible to take advantage of the Home Affordable Modification Program, part of a federal initiative to help homeowners." It further states that if Rubio calls a certain number, Chase will send an information packet and forms she needs to sign. The letter then states: "Once we receive all of your documentation we'll determine if you are eligible for the program. If you are, we'll send you a letter with details about your new, affordable mortgage payment – and you will start paying the new amount during a trial period. If you make those trial payments on time and fulfill all the other program conditions, we will offer you a permanent modification to keep your payments low."

11

**DISPOSITION**

The judgment is affirmed.  Respondent is awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.

12