**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ACP, INC., a Delaware corporation, | No. 13-16840 |
| Plaintiff - Appellant, | D.C. No. 4:13-cv-01572-PJH |
| v. | |
| SKYPATROL, LLC, a Florida limited liability company; GORDON HOWARD ASSOCIATES, INC., DBA PassTime USA, a Colorado corporation, | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, Chief District Judge, Presiding

Argued and Submitted November 18, 2015
San Francisco, California

Before: McKEOWN, RAWLINSON, and PARKER,[**] Circuit Judges.

Judges McKeown and Rawlinson join as to Part I. Judges McKeown and Parker join as to Part II. Judge Parker dissents as to Part I, and Judge Rawlinson dissents as to Part II.

---

      [*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

      [**]     The Honorable Barrington D. Parker, Jr., Senior Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

ACP, Inc. ("ACP") challenges the district court's dismissal of its complaint against Gordon Howard Associates, Inc. ("Gordon Howard") and Skypatrol, LLC ("Skypatrol"). ACP contends that the district court erred in holding that ACP failed to sufficiently allege that Gordon Howard and Skypatrol entered into a unilateral contract requiring reimbursement for ACP's investigation of a potential investment. ACP also maintains that the district court abused its discretion in denying leave to amend so that ACP could allege additional facts in support of its breach of unilateral contract claim and a promissory estoppel claim.

## I.    The Unilateral Contract

Under California law, a promisor may not seek enforcement of a unilateral contract. *See Faigin v. Signature Grp. Holdings, Inc.*, 150 Cal. Rptr. 3d 123, 135 (Cal. Ct. App. 2012) (articulating that "[a] unilateral contract is one in which there is only one promisor.  Any act or forbearance by the promisee may constitute consideration for the promise and an acceptance of the offer" (citation omitted)); *see also Asmus v. Pac. Bell*, 999 P.2d 71, 75 (Cal. 2000) (observing that "[i]n a unilateral contract, there is only one promisor, who is under an enforceable legal duty.  The promise is given in consideration of the promisee's act or forbearance" (citation omitted)).  The district court correctly held that ACP was the promisor under the letter agreement because ACP, using its own letterhead, conveyed an offer to Gordon

Howard and Skypatrol concerning a potential acquisition. ACP's performance of the agreement did not create a binding unilateral contract. *See Faigin*, 150 Cal. Rptr. 3d at 135. Thus, the district court properly dismissed ACP's contract claim.

The district court did not engage in impermissible fact-finding in dismissing ACP's complaint. The district court took judicial notice of the letter agreement relied on in the complaint and correctly concluded that ACP was the promisor after considering the terms of the agreement. *See Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) (explaining that "[a]lthough we normally treat all of a plaintiff's factual allegations in a complaint as true, we need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" (citations, alteration, and internal quotation marks omitted)). Any leave to amend this claim would have been futile.

## II.     Dismissal Without Leave to Amend

ACP also sought leave to amend its complaint to add a claim for promissory estoppel. The district court denied ACP's motion to amend its complaint; the majority reverses that ruling. Given the liberal rules of amendment endorsed by the Supreme Court and this circuit, *see Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)), ACP should have been afforded that opportunity.

To state a claim for promissory estoppel, a plaintiff must show: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Aceves v. U.S. Bank, N.A.*, 120 Cal. Rptr. 3d 507, 514 (Cal. Ct. App. 2011) (internal quotation marks omitted) (quoting *Advanced Choices, Inc. v. State Dep't of Health Servs.*, 107 Cal. Rptr. 3d 470, 479 (Cal. Ct. App. 2010)). Indeed, the unamended complaint already comes close to pleading the necessary elements.

ACP's complaint sufficiently alleged a "clear and unambiguous" promise and that ACP was injured by its reliance on that promise by incurring expenses pursuing the transaction. The missing elements—reasonableness and foreseeable reliance—in fact are alluded to in the original complaint, which alleges that the promise to reimburse served as an "inducement to ACP's investigation of the potential transaction." To the extent these elements are not inherently obvious, there is no reason they cannot be added in an amended pleading, and such a claim would not have been futile. For these reasons, leave to amend should not have been denied.

The judgment of the district court is affirmed as to dismissal of the unilateral contract claim and reversed with respect to the denial of leave to amend to add a

4

promissory estoppel claim. On remand, ACP should be permitted to amend its pleadings with respect to promissory estoppel.

Each party shall bear its own costs on appeal.

AFFIRMED in part, REVERSED in part, and REMANDED.

FILED

MAY 06 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

PARKER, J., dissenting as to Part I:

Because the complaint plausibly alleges that Appellees Gordon Howard Associates and Skypatrol, LLC (the "Companies") promised to reimburse Appellant ACP, Inc. for the expenses it incurred in pursuit of the proposed transaction and failed to do so, I respectfully dissent.  The majority correctly concludes that a unilateral contract only binds the promisor, and thus only the promisee, once it has performed, can seek to enforce the contract.   But at this point, I part ways with the majority because the fact that the transaction may have been proposed by ACP does not mean that ACP was the promisor.  Rather, the language of the letter agreement—and even the arguments of the parties—indicates that the Companies were the promisors, and ACP the promisee.  Once ACP performed, the Companies were bound and, having failed to pay, are liable to ACP. Consequently, ACP's complaint, which contains these assertions, states a claim that should not have been dismissed under Rule 12(b)(6).

Although we assume that the parties are familiar with the relevant facts, I lay out some of the key ones alleged by ACP.   The dispute arises from a letter agreement sent by ACP to the Companies in January 2012.  The letter references an "indication of [ACP's] interest" in the "potential acquisition of [the Companies]."  The final paragraph of the letter clarifies that the "letter agreement

is an expression of mutual intent only and is non-binding, **except** for the terms related to Exclusivity and Expenses, which will be binding upon each of the undersigned." The "Expenses" provision, which frames the dispositive issue in this litigation, provides that the Companies "shall reimburse [ACP] for its actual out-of-pocket expenses incurred in pursuit of the Transaction." It is undisputed that the Companies signed and returned the letter.

The complaint alleges that although ACP undertook an investigation into the transaction, thus triggering the Companies' promise to reimburse ACP, the Companies refused to honor that promise. ACP argued below and on appeal that the letter agreement is a unilateral contract and that the Companies promised to reimburse ACP in exchange for the investigation it conducted in pursuit of the transaction. The Companies argue that the contract is an unenforceable unilateral contract because ACP, the offeror, offered no consideration. But this argument is an incorrect one that is not consistent with basic contract principles.

In a unilateral contract, the promisor makes a promise in exchange for performance by another party, the promisee. *Sateriale v. R.J. Reynolds Tobacco Co.* 697 F.3d 777, 785 (9th Cir. 2012). The majority is correct in its fundamental premise that only the promisor in a unilateral contract is under an enforceable legal duty to perform and that the promisor's obligation to fulfill its promise is triggered

2

once the promisee renders performance.  *Asmus v. Pac. Bell*, 999 P.2d 71, 75 (Cal. 2000).  The majority also correctly recognizes that the pertinent inquiry is which party is the "promisor" (and thus bound by an enforceable legal duty), and which party is the "promisee" (and thus free of any legal duty to perform).[1]  The majority errs, however, in concluding that ACP must be the promisor merely because it initiated the transaction and proposed the agreement.

The majority summarily concludes that ACP was the promisor, and thus may not seek enforcement of the contract, reasoning that "ACP was the promisor under the letter agreement because ACP, using its own letterhead, conveyed an offer to Gordon Howard and Skypatrol concerning a potential acquisition."  Maj. Op. at 2–3.  But this conclusion is wrong because it is irrelevant which party initially proposed the transaction. The dispositive question under California law is which party made a promise to perform.  Here, indisputably, the Companies did so.

---

[1] The district court and the parties focus intensely on the identity of the offeror.  But neither the district court nor the Companies provide support for the proposition that the identity of the offeror has any bearing on whether a contract was properly formed, and the majority notably abandons that rhetoric, asking instead which party was the promisor.  At any rate, the purpose of examining the offeror/offeree relationship is to determine whether there is "mutual assent," a necessary element of any contract.  *Donovan v. RRL Corp.*, 27 P.3d 702, 709 (Cal. 2001).  We see no credible argument that the Companies, in signing a letter that unambiguously bound them to reimburse ACP for its due diligence costs, failed to assent to the formation of the agreement.

3

Both parties invoke the "Brooklyn Bridge" example of a unilateral contract well known to all first year law students. The promisor tells the promisee, "I will pay you $100 if you walk across the Brooklyn Bridge." The promisee walks across the Brooklyn Bridge, and is now entitled to her $100. But the respective obligations would be no different merely because it was the promisee who proposed the transaction. For example, the promisee asks the promisor, "Will you pay me $100 if I cross the Brooklyn Bridge?" The promisor says, "Yes, I will pay you," and the promisee walks across the Brooklyn Bridge. The promisee, by soliciting the promise, is no less the promisee, and is no less entitled to the $100 reward.

The confusion stems from the mistaken belief by the parties and the majority that offeror and promisor are synonymous terms. They are not. It may very well be the case, as it was here, that the party proposing the transaction did so by soliciting a promise conditioned on its performance of some act. If the other party agrees and makes a promise, a unilateral contract is formed. In none of the cases cited by the majority or the Companies have California courts suggested that a promisee in a unilateral contract is not entitled to enforce the contract merely because he solicited the promise, rather than waiting for one to arrive at his doorstep.

The simple facts of this transaction have not been lost on the parties. Indeed, the Companies admit that by receipt of the letter agreement, "the Companies were asked to make a promise." Later, the Companies assert that "[i]f the sale had gone through, we would not be here today," suggesting that their promise to reimburse ACP would be enforceable if the Companies had been satisfied with the result of the investigation.[2] In any event, the terms of the promise were clear: As alleged in the complaint, the Companies promised to reimburse ACP for expenses incurred in investigating the transaction.

The Companies and the majority stop short of considering the practical implications of failing to enforce a garden variety contract such as this one. Intercompany transactions take place only because each side has made a calculated decision that the potential benefit of the transaction outweighs the costs—legal fees, due diligence, efforts to obtain financing, etc. But a party can induce a counterparty to consider a transaction that would ordinarily be undesirable by agreeing to displace some of those costs. These types of commercial agreements are quite common, and allow parties who otherwise would be uninterested in a

---

[2] This assertion also illuminates the Companies' motivation for objecting to the reimbursement—they are simply unhappy that the transaction did not go through. Neither the majority nor the Companies point to any language in the letter agreement suggesting that the Companies' obligation was only enforceable if the transaction closed.

joint transaction to reallocate costs such that the transaction has the potential to be mutually beneficial.

That is the situation contemplated here: ACP was apparently drawn to the transaction in part because it knew that the costs would be partially borne by the Companies. It drafted (allegedly with the Companies' input) an agreement reflecting an allocation of costs under which the Companies' promise to pay arose when ACP undertook the investigation. The Companies contend that as the transaction proceeded, they became dissatisfied with the level of the costs and the quality of the investigation, and once the transaction did not close, they were unwilling to absorb those costs. But while this dissatisfaction may at some point cause the parties to litigate the issue of damages, it has nothing to do with the existence of an enforceable contract. In sum, whatever the law of contract may say about the offeror/offeree relationship, the fundamental goal of contract law "is to give effect to the mutual intention of the parties." *Powerine Oil Co., Inc. v. Super. Ct.*, 118 P.3d 589, 597–98 (Cal. 2005). ACP—and the Companies—are entitled to have that intention given effect.

*ACP Inc v Skypatrol et al   13-16840*

RAWLINSON, J., dissenting as to Part II:

The district court did not abuse its discretion in denying leave to amend because any amendment premised on a promissory estoppel claim would have been futile. *See Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015) ("Although leave to amend shall be freely given when justice so requires, it may be denied if the proposed amendment either lacks merit or would not serve any purpose because to grant it would be futile in saving the plaintiff's suit. . . .") (citation and internal quotation marks omitted).

Under California law, "promissory estoppel is an alternative theory of recovery that enforces promises because the *promisee* has justifiably and foreseeably relied on the promise . . ." *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.*, 211 Cal. App. 4th 230, 243 (2012) (citation and internal quotation marks omitted) (emphasis added). Only the *promisor* is bound on a promissory estoppel claim. *See Garcia v. World Sav., FSB*, 183 Cal. App. 4th 1031, 1041 (2010). As discussed in Part I, ACP was the promisor in the letter agreement rather than the promisee. Accordingly, ACP could not have been induced to its detriment as a promisee, as required to state a promissory estoppel claim. *See Douglas E. Barnhart, Inc.*, 211 Cal. App. 4th at 243. Because ACP cannot, consistent with the facts, assert that it is a promisee under the letter

agreement, amendment would have been futile. *See Chinatown Neighborhood Ass'n*, 794 F.3d at 1144. I would affirm the district court decision in its entirety.