[Civ. No. 10620.   Second Appellate District, Division One.—July 16, 1936.]

WILLIAM SCHRAMM, Petitioner, v. INDUSTRIAL AC-CIDENT COMMISSION, ORLIE R. BLAIR et al., Respondents.

Hewitt & Anderson and Don P. Fogarty for Petitioner.

Everett A. Corten, Emmet J. Seawell, F. Britton McConnell and J. Jay Smith for Respondents.

HOUSER, P. J.—The facts that would appear to be pertinent to a decision of the several questions that are presented herein are as follows: Two individuals, Munson and Hewes (as a copartnership), were the owners of a store which they had leased to Schramm (petitioner herein), who used the greater portion thereof for the purpose of conducting a grocery therein. The remainder of the store room was subleased by Schramm to one Kuhn, who conducted therein a vegetable store. For some months one Blair had been indebted to Schramm in the sum of about $23 for groceries which the former had purchased from the latter. Similarly, Blair owed Kuhn $3.50 for vegetables. It also appears that some of the vegetable stands in Kuhn's store were either somewhat out of repair, or that to replace old stands new ones were desired. Blair was more or less out of employment, and, at least partly in order to discharge or to make payment on account of his several financial obligations, as well as on the part of Schramm individually, and Munson and Hewes as a copartnership, to satisfy Kuhn as a tenant, an arrangement was made among the several parties by which Munson and Hewes agreed to furnish the necessary materials for the

building of one new vegetable stand, which was designed to replace two old ones; Blair was to perform the labor necessary to its construction; upon its completion the vegetable stand was to be the property of Munson and Hewes; and thereupon Blair's several debts were to be canceled. After the vegetable stand had been built on premises that also belonged to Munson and Hewes, Blair was injured in falling from a truck that was the property of Kuhn, and which the latter and Schramm had directed to be used in transporting the vegetable stand from the place where it had been built to the place where it was to be used in Kuhn's store. On the hearing before the respondent commission of Blair's claim for adjustment of compensation on account of his injuries, an award was made, in effect, that Schramm only was liable, and consequently that, although Schramm's liability in that regard apparently was covered by a policy of insurance that had been issued by National Automobile Insurance Company, Schramm was ordered to pay to Blair a weekly compensation of $17.78, besides various expenses that had been incurred by Blair in and about being cured of his said injuries. In due course, at the instance of Schramm, this court issued its writ of *certiorari* in the premises.

By its award the respondent commission having relieved Schramm's insurance carrier from liability, it is first urged that in that regard the respondent commission acted in excess of its powers;—a contention which (especially in view of the recent decision in the case of *Bankers Indemnity Ins. Co.* v. *Industrial Acc. Com.*, 4 Cal. (2d) 89 [47 Pac. (2d) 719]) the respondent commission conceded to be correct, and thereupon suggested that its award theretofore made herein be annulled by this court and the matter remanded to the respondent commission for further proceedings. However, to such proposed order the insurance company has objected. It therefore is deemed advisable that the inducing facts relative to the issuance of the insurance policy be stated:

For some time preceding the date when the accident in question occurred, Schramm and one other person had been conducting the grocery as a partnership, under the fictitious name of "Bill's Market"; and in the name of such partnership and the said fictitious name had carried a workmen's compensation insurance policy which had been pro-

cured from one Rose, who at that time was acting as an agent for the Maryland Casualty Company, which issued the policy. Thereafter, and before that insurance policy had terminated, the said partnership was dissolved. In the meantime, Rose had ceased to be the agent for the Maryland Casualty Company, but had become an agent or broker for the National Automobile Insurance Company. As the date approached when the policy was about to expire, Schramm applied to Rose for the issuance of a new policy. At the same time he informed Rose of the fact that his former partnership had been dissolved, and requested of Rose that the new policy be issued to Schramm alone. Thereafter, and before the date of the happening of the accident in question, at the instance of Rose the National Automobile Insurance Company issued its policy, presumably for the protection of Schramm only. However, instead of issuing the policy in that manner, it purported to protect the individual members of the former partnership, which at that time no longer was in existence; but, as before, the new policy did cover the premises and the business known as "Bill's Market". On the delivery of the policy to Schramm, which was on the day before the accident in question occurred, Schramm at once discovered the mistake which had been made, and immediately notified National Automobile Insurance Company thereof. Six days thereafter the policy was corrected in accordance with the original instructions given for its issuance, and made effective as of the day preceding the date of the accident. On the hearing of the application for adjustment of Blair's claim for compensation, Rose testified that at all times pertinent to the matter he was acting as an authorized *agent* (as distinguished from a broker) of the National Automobile Insurance Company. At the time when Rose gave such testimony, the insurance company practically admitted that such statement was correct, but reserved the right to introduce evidence to the contrary if, prior to the time when the hearing should be concluded, it should be discovered that Rose's statement in that regard was incorrect; but at no time did the insurance company produce or offer to produce any evidence that in any manner could be deemed contradictory of the fact that Rose was its agent.

With respect to the point presented as to whether in such circumstances the insurance policy in question afforded protection to Schramm from personal liability, the case of *Bankers Indemnity Ins. Co.* v. *Industrial Acc. Com.*, *supra*, would seem to answer conclusively to the effect that, as far as Schramm was concerned in that regard, he was entitled to an order by the respondent commission by which he should be discharged from liability. Specifically, in the cited case, in substance it was held (syllabus) that even where the insured was represented by brokers "who in cases of compensation insurance acted as soliciting agents for it, their acts as such, in so far as they were instrumental in effecting such insurance, were the acts of petitioner (the insurance company); and where it appeared that the insured acted in good faith in his application for the policy, a mistake made therein by such agents in the designation of the insured, which was acted upon by the petitioner (insurance company), was the act of petitioner".

■ However, as far as Schramm is concerned, even assuming the binding force of the insurance policy as an instrument of ordinary protection from liability for injuries that may have been sustained by any of Schramm's regular employees while engaged in their several duties as such, it is contended by National Automobile Insurance Company that by the terms of its policy, in the particular circumstances herein, and considering the work which Blair was engaged to perform, Schramm was not protected. In other words, that the policy did not cover a situation such as is here presented. But notwithstanding the serious manner in which the point is here presented, it occurs to this court that in advance of any ruling made thereon by the respondent commission, no decision should be here indicated. Manifestly, the determination of the point is within the jurisdiction of the commission. It not having ruled in the matter, this court has nothing to review in this proceeding with reference thereto.

■ But it is asserted, not only by National Automobile Insurance Company, but as well by the other defendants, that in constructing the vegetable stand Blair was not acting either as an employee of Schramm, or of either or of any of the other defendants; but, to the contrary, that Blair was acting wholly and solely in the capacity of an independent contractor. In

that connection, having in mind the relationship that each of the interested parties bore to the other, or the others, in addition to that which hereinbefore has been stated, it appears that, in substance, Blair testified that as far as Schramm was concerned, is was agreed between them that Blair was to be compensated for his labor at the rate of sixty cents per hour, and that when the work should be completed he and Schramm would "settle up the account". Likewise, it was understood between Blair and Kuhn that the account owed by the former to the latter would also be liquidated in the course of the work to be done. Blair and Kuhn prepared the original plan and specifications for the construction of the vegetable stand, and later Kuhn suggested a material change therein that was accepted by Blair and incorporated in the job as completed. To some extent Kuhn supervised the work of construction. Munson and Hewes actually furnished the materials and the place for doing the work. Following the completion of the construction of the vegetable stand, Kuhn and Schramm collaborated to the extent that Kuhn furnished a truck to transport the vegetable stand to Kuhn's store, and Schramm in having at least one of his regular employees assist in such transportation.

In the performance of labor for compensation by one person for the benefit of another, the rules for a correct determination of the status of the respective parties, one toward the other, have been not only the subject of legislation, but as well, on many occasions, a question of construction or interpretation by the courts. The possible benefit that might result from a review of the authorities on the question of when a person may be considered an employee, and when an independent contractor, would hardly compensate for the time and energy that would be necessary to the accomplishment of such a task. It is sufficient to note that by section 8, as well as by subdivision 4 of section 33, of the Workmen's Compensation, Insurance and Safety Act, the term "employee" is defined; and this court is convinced that the conclusion reached by the respondent commission with reference to the status of Blair was well within the intent and meaning of the provisions of the statute to which reference has just been had.

In a matter of this kind, particularly with reference to the legal impropriety of a reviewing court disturbing a ruling

made by an inferior tribunal on a question as to whether in given circumstances an applicant for adjustment of his claim to compensation was an employee, or an independent contractor, in the case of *Hartford A. & I. Co.* v. *Industrial Acc. Com.*, 202 Cal. 688, 692 [262 Pac. 309, 58 A. L. R. 1392], it was said:

"It is, of course, well settled that this court will not annul an award of the commission where there is substantial evidence to support the commission's finding and order. (Citing authorities.) And if the findings are supported by inferences which may fairly be drawn from the evidence, even though the evidence be susceptible of opposing inferences, the reviewing court will not disturb the award." (Citing authorities.)

Furthermore, in the case of *Archbishop* v. *Industrial Acc. Com.*, 194 Cal. 660, 661, 667 [230 Pac. 1], it was said that:

"It was held in *Flickenger* v. *Industrial Acc. Com.*, 181 Cal. 425 [19 A. L. R. 1150, 184 Pac. 851], that the definition of an independent contractor contained in the amendment of the act in 1917 (Stats. 1917, p. 831) did not restrict or enlarge the meaning of the term: and hence the status is determined by rules used before the creation of the Industrial Accident Commission in ordinary actions at law. 'Whether a workman is an employee within the Workmen's Compensation Act or an independent contractor is a question of fact upon which the judgment of the Industrial Commission is conclusive where the facts are in dispute, and becomes a question of law only when but one inference can reasonably be drawn from the facts.' (Citing authority.) It was said in *Western Pac. R. R. Co.* v. *Industrial Acc. Com.*, 193 Cal. 413 [224 Pac. 754] : 'It is the rule that where from the evidence two opposing inferences may be drawn, that inference which is accepted by the commission must be sustained if there is evidence in the record to support it and if it is a reasonable inference to be drawn from that evidence. . . . ' " (Citing authorities.)

Considering the evidence to which reference hereinbefore has been had, together with the law as indicated by the authorities to which attention just has been directed, it becomes manifest, not only that such evidence was sufficient to sustain the conclusion reached by the respondent commission

in regard thereto, but as well, that this court is unauthorized to disturb such conclusion.

Likewise, in regard to the question here presented as to whether the respondent commission exceeded its jurisdiction when, in accord with the evidence, it concluded that "the evidence does not establish that said injury was caused by the intoxication of the employee". It would be useless to here set forth the evidence that was adduced on the hearing before the respondent commission touching that issue. True, there was an abundance of evidence that tended to a conclusion wholly different from that reached by the respondent commission; but it also is true that the evidence, upon which the respondent commission was entitled to rely, was sufficient to justify the finding that was made. The necessary result is that such decision by the respondent commission is conclusive in this proceeding.

From the statement of facts which heretofore has been set forth herein, it should be clear, not only that Blair was an employee of Schramm, but also that he occupied a similar position as to each of the other interested parties.

Nor is this court able to concur in the contention of the several defendants to the effect that the award of compensation to Blair was excessive. Based on his testimony, which the respondent commission had the right to accept as true, for the labor he was engaged to perform he was to be paid a price of sixty cents per hour; and on such a basis, for an eight-hour day the computation of the award to which he was entitled appears to be indisputable.

The award is annulled, and the matter is ordered remanded for further proceedings therein not inconsistent with the views herein expressed on each of the several questions that herein have been given consideration.

York, J., and Doran, J., concurred.