Filed 8/20/14  Harris v. Bank of America CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MONIQUE HARRIS, | |
| Plaintiff and Appellant, | E054887 |
| v. | (Super.Ct.No. CIVRS1009937) |
| BANK OF AMERICA, N.A., et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Joseph R. Brisco, Judge.  Affirmed.

Monique Harris, in pro. per., for Plaintiff and Appellant.

Bryan Cave, Sean D. Muntz and Allen J. Beck for Defendants and Respondents.

Monique Harris[1] (Harris) sued Bank of America, N.A. (Bank); Recontrust Company, N.A. (Recontrust); Countrywide Home Loans, Inc. (Countrywide); Landsafe, Inc. (Landsafe); and Shea Homes, Inc. (Shea).  The first amended complaint (FAC)

---

[1]  Harris is a self-represented litigant, but is also a licensed California attorney.

included causes of action for (1) misrepresentation and fraud; (2) fraud in the inducement of an arbitration agreement; and (3) unlawful business practices in violation of Business and Professions Code section 17200.[2] Bank, Recontrust, Countrywide, and Landsafe (collectively, "defendants") demurred to the FAC. The trial court sustained the demurrer without leave to amend and dismissed Harris's lawsuit with prejudice.

Harris raises five issues on appeal. First, Harris contends the trial court erred because the FAC states causes of action for misrepresentation and fraud. Second, alternatively, Harris asserts the FAC could be amended to cure any defect. Third, Harris contends the trial court erred by sustaining the demurrer because the FAC states a cause of action for unlawful, unfair, or fraudulent business practices. (§ 17200.) Fourth, in the alternative, Harris asserts any defect in the business practices cause of action could be cured by amendment. Fifth, Harris contends she was not required to tender payment on her mortgage because the FAC alleged fraud. We affirm the judgment.

## PROCEDURAL HISTORY

A.    ORIGINAL COMPLAINT

On September 10, 2010, Harris filed her original complaint against Shea and Countrywide, and included causes of action for negligence, breach of contract, misrepresentation and fraud, and unlawful business practices (§ 17200). Countrywide demurred to the original complaint. The trial court sustained the demurrer without leave

_____

[2] All subsequent statutory references will be to the Business and Professions Code, unless otherwise indicated.

to amend on the negligence and breach of contract causes of action. The trial court sustained the demurrer with leave to amend on the unlawful business practices, and misrepresentation and fraud causes of action.

## B.    AMENDED COMPLAINT

Harris's FAC was filed in February 2011. Harris sued defendants and Shea. The causes of action included (1) misrepresentation and fraud, against defendants and Shea; (2) fraud in the inducement of an arbitration agreement, against Shea; and (3) unlawful business practices in violation of section 17200, against defendants and Shea.

In the FAC, Harris explained she was seeking to "rescind an illegal and void residential mortgage loan." Harris asserted Shea, Countrywide and Landsafe conspired together in "an 'inflated appraisal scheme,'" to cause fraudulent property appraisals to be prepared. Harris alleged Countrywide required homebuyers to have their properties appraised by Landsafe, and Landsafe used appraisers who appraised properties "at or above contract price, even [if] it meant completing appraisals in violation of regulatory guidelines."

Harris's home was located in Rancho Cucamonga (the property). Harris asserted the appraisal of the property was "tainted with false and misleading data, deceptive practices, and violations of the regulatory standards for professional appraisers." For example, Harris alleged the appraiser ignored falling property values. Harris alleged the appraisal scheme caused homebuyers, such as Harris, "to obtain mortgage loans far in excess of their property's true value, which in turn, caused homebuyers to go into default and face foreclosure."

3

In May 2007, Harris agreed to purchase the property from Shea for $459,500. Shea employees, Linda Harrington and Tina Pendleton, told Harris she could cancel the purchase agreement if the appraisal reflected the property's value was less than the agreed-upon purchase price. After entering into the purchase agreement, Shea employees recommended Harris apply for a mortgage with Countrywide. Harris entered into a loan agreement with Countrywide on or about August 1, 2007. Countrywide then ordered an appraisal from Landsafe. The appraisal was assigned to an "'approved' appraiser[] who appraised the [p]roperty on or about August 24, 2007 at $459,600 ($100 more than the sale/contract price)."

Harris alleged that after the sale of the property closed, she discovered "the appraisal was false and that the appraiser purposefully failed to consider comparable sales that would have revealed lower values, failed to disclose information pertaining to the downward trending real estate market and made false statements of market stability." Harris also alleged "the appraiser failed to take into account reduced prices, incentives and other closing assistance (concessions) provided by Shea Homes that both Countrywide and Shea Homes knew or should have known would reduce the value of Shea Homes' properties." Harris asserted the property was appraised for "nearly $100,000 more than the [p]roperty's true value."

Harris alleged that if a true and accurate appraisal had been conducted, then she would have canceled the purchase agreement and not purchased the property. Harris alleged defendants' conduct caused her to (1) overpay for her home; (2) overpay principal, interest, and taxes; and (3) suffer foreclosure.

In the FAC, the first and second causes of action for misrepresentation and fraud were combined under a single heading, i.e., the heading read, "First and Second Causes of Action." Harris asserted Shea, Countrywide, and Landsafe participated in "an 'inflated appraisal scheme' with the intent to defraud," and that conduct caused Harris to overpay for the property by approximately $100,000.

The third cause of action was for fraud in the inducement of the arbitration agreement. Harris asserted two Shea employees incorrectly told Harris that acceptance of the arbitration clause in the purchase agreement was required in order to purchase the property. Harris alleged that she learned the property could have been purchased even if she elected not to submit to binding arbitration.

The fourth cause of action was for unlawful business practices in violation of section 17200. Harris asserted defendants' "'inflated appraisal scheme'" constituted an unlawful business practice because it led to "unjust enrichment and is immoral, unethical, oppressive, unscrupulous, substantially injurious to consumers and offends public policy." Harris asserted she "lost money or property as a result" of the defendants' business practices.

Harris sought restitution, general damages, punitive damages, costs, attorney's fees (if they were incurred), and injunctive relief (a) stopping the trustee's sale of the property, (b) rescinding the mortgage on the property, and (c) disgorgement of all profits associated with the allegedly unlawful business practices, including the $5,000 deposit paid by Harris.

5

C.      DEMURRER

Defendants demurred to the FAC.  Defendants asserted Harris purchased a townhome from Shea in May 2007 for a total purchase price of $460,870.  Harris obtained a mortgage from Countrywide in the amount of $368,000.  Harris also obtained a $92,000 home equity line of credit (HELOC).  Harris stopped making mortgage payments on the property in September 2009.

Defendants asserted the first, second, and fourth causes of action, for fraud, misrepresentation, and unlawful business practices did not include facts sufficient to constitute a cause of action.  Defendants argued appraisal reports are made for the lender's benefit, not the buyer's benefit, and therefore any problems with the appraisal do not create a cause of action for a buyer because the lender and appraiser do not owe a duty to the buyer in relation to preparing the appraisal.  (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1097 (*Nymark*).)  Defendants explained the appraisal is conducted for the purposes of helping the lender determine how much money to loan a buyer, and therefore, is only conducted for the lender's purposes.

Additionally, defendants asserted the fraud and misrepresentation causes of action failed because Harris did not allege sufficiently specific facts.  Defendants argued Harris failed to allege "how, why, when, where, and by whom, any alleged misrepresentations were made.  She does not provide any detail regarding the alleged concealment of material facts.  Nor does she allege the authority of the individuals making the statements to speak on behalf of [d]efendants, what they said or wrote, or when the representations were made."

6

Defendants also asserted Harris failed to allege she justifiably relied on the appraisal in purchasing the property. Further, defendants argued Harris, as part of the loan applications, "expressly acknowledged Countrywide made no representations to her about the condition or value of the property." Therefore, defendants asserted, there could not be justifiable reliance.

As to the fourth cause of action, for unfair business practices, defendants asserted Harris lacked standing to bring the cause of action because she failed to "demonstrate[] a loss of money or property. [Harris] is in default on her loan and her property has not yet been foreclosed upon." In regard to fraudulent conduct underlying the unfair business practices allegation, defendants asserted Harris failed to plead facts with sufficient specificity, as set forth *ante*. As to Harris's request for an injunction stopping the trustee's sale, defendants argued the foreclosure could not be stopped because Harris failed to tender payment on the mortgage.

D.    OPPOSITION

Harris opposed the demurrer. In regard to misrepresentation and fraud, Harris argued that she had been told by an employee of Countrywide, Roy West (West), that if the property appraised for less than the agreed-upon purchase price, then Harris would not be obligated to purchase the property, and therefore the appraisal was not conducted merely for the lender's purposes. Harris asserted she would have canceled the purchase agreement, had the appraisal been properly conducted and reflected the lower value of the property.

7

Further, Harris asserted the heightened pleading requirements for fraud are relaxed when the defendants necessarily possess full information concerning the facts at issue. (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 217, superseded by statute on other grounds.) Harris asserted defendants had full knowledge of the property's true value and the poor market conditions, and therefore, they "knew or should have known that their representations . . . were false and misleading." As a result, Harris asserted the heightened pleading requirements were inapplicable.

In regard to unlawful business practices, Harris asserted she did suffer damages as a result of defendants' business practices. Harris argued she paid $5,000 to Shea as part of purchasing the property and she made payments to defendants for a mortgage that she would not have obtained but for defendants' unlawful business practices. Additionally, Harris asserted she could lose her home through foreclosure, which would result in a loss of property. Harris also asserted defendants "advised the appraiser who conducted the appraisal herein to inflate the Property's value in violation of California Civil Code Section 1090.5."

Harris asserted she was not required to tender full payment on the mortgage because requiring payment would permit defendants to benefit from their wrongdoing, in that full payment would be approximately $100,000 more than the property's value. Alternatively, Harris requested leave to amend the FAC because she "is confident she can adequately plead her causes of action." Harris did not provide any specific information regarding how she would amend the FAC.

8

E.    REPLY

Defendants replied to Harris's opposition.  Defendants asserted Harris had negotiated her purchase price with Shea, entered into a purchase agreement with Shea, and applied for a Countrywide mortgage prior to the appraisal being conducted. Defendants asserted Harris failed to allege in the FAC and opposition that the appraisal was conducted for her benefit.  Defendants again argued the appraisal is for the lender's benefit, not the buyer's benefit.  (*Nymark*, *supra*, 231 Cal.App.3d at p. 1097.) Defendants asserted that even if the appraisal overvalued the home, Harris would not have a right to recover against defendants because defendants owed no duty to Harris in relation to the appraisal.

In regard to the fraud pleading requirements, defendants asserted fraud must be pled with specificity.  Defendants asserted the FAC only reflected agents of Shea made various representations to Harris—not defendants' agents.  Defendants asserted the allegation in the opposition, that West, a Countrywide employee, made a representation to Harris about canceling the purchase agreement if the appraised were less than the purchase price was "inconsistent with [Harris's] pleaded allegations, and should be ignored.  By the time the appraisal was prepared, [Harris] already agreed to buy the home, at a price she negotiated with Shea Homes, Inc.  The appraisal conducted by Landsafe was not intended to help [Harris] determine a purchase price.  It was intended for Countrywide to determine whether the loan would be adequately secured."

In regard to reliance and the alleged comments by West, defendants asserted Harris could not show she justifiably relied on the comments because (1) Harris had

9

already agreed to purchase the property and negotiated the price prior to the appraisal being conducted, and (2) in Harris's loan application she acknowledged "'neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property.'" Defendants asserted Harris's failure to dispute these two facts, or set forth facts reflecting justifiable reliance, cause her causes of action for misrepresentation and fraud to fail.

Next, defendants asserted Harris failed to allege damages. Defendants asserted Harris lived at the property payment-free for approximately two years and the property had not been foreclosed upon. Additionally, defendants asserted Harris agreed to purchase the property, so if she were paying a high principal, interest, and taxes, that was her choice. Defendants again stressed that Harris negotiated the purchase prior to the appraisal being conducted. Defendants again asserted the unlawful business practices cause of action failed because Harris failed to meet the pleading requirements for fraud—the act underlying the cause of action.

In regard to the allegation in the opposition—that defendants advised the appraiser to inflate the property's value—defendants asserted Civil Code section 1090.5 prohibits a "person with an interest in a real estate transaction involving a valuation [from] improperly influenc[ing] or attempt[ing] to improperly influence the development, reporting, result, or review of that valuation, through coercion, extortion, bribery, intimidation, compensation, or instruction." Defendants argued Harris failed to allege defendants had an interest in the real estate transaction, as the term is used in the

10

statute. Additionally, defendants asserted Civil Code section 1090.5 does not create a private right of action.

Defendants further asserted Harris should be required to tender payment on the mortgage to stop the trustee's sale because Harris freely assumed the debt, and it would be "inequitable to allow her to continue living in [the] property for free."

F.     HEARING

On August 11, 2011, the trial court held a hearing on defendants' demurrer. Harris informed the court she was working on a loan modification that would settle the case. Harris requested the trial court dismiss the case without prejudice. Defendants asserted Harris decided to dismiss the case after receiving the court's tentative ruling. Harris denied the assertion. Harris explained she was planning to request the case be stayed during the loan modification process, but defendants had suggested she request the case be dismissed without prejudice. The trial court found Harris had not filed a request for dismissal, and therefore proceeded with the demurrer hearing.

The court said its tentative ruling was to sustain the demurrer as to the first, second, and fourth causes of action without leave to amend. Harris asked the court to grant her leave to amend. Harris explained that when she filed the FAC, Shea was involved, so Harris alleged a conspiracy between defendants and Shea, but since that time, Harris and Shea had settled. Harris asserted she could plead facts with more specificity regarding Countrywide and West's representations.

11

Defendants asserted the fact that Shea was no longer a party did not change the facts of the case. Defendants argued the appraisal was not obtained for Harris's benefit; rather, it was obtained for the purpose of Countrywide deciding whether to give the loan to Harris. Moreover, defendants asserted Harris acknowledged in her loan documents that Countrywide did not make any representations regarding the value of the property.

Harris argued there was precedent reflecting appraisals are conducted for the buyer's benefit, not just the lender's benefit. The court explained Harris's combined causes of action for fraud and misrepresentation did not allege (1) fraud committed by defendants, or (2) acts outside of their role as a lender. In regard to unlawful business practices, the court found Harris failed to allege "any unfair business practices." As to injunctive relief, the court found Harris failed to allege she tendered payment.

Harris responded that tender is not required when fraud is alleged. The court explained Harris failed to properly allege fraud in regard to defendants. Harris said she alleged "illegality," due to the inflated appraisal value. The court concluded Harris had two opportunities to plead a cause of action but failed to do so. Harris again requested leave to amend. Harris asserted she could plead the causes of action "with more specificity," because "[t]here is a case here." The court again explained Harris already had two opportunities to present a cause of action, and since Harris failed to do so, the court concluded Harris was not able to do so. The court sustained the demurrer without leave to amend.

12

**DISCUSSION**

A.      <u>MISREPRESENTATION AND FRAUD</u>

1.      *CONTENTION*

Harris contends the trial court erred because the FAC states causes of action for misrepresentation and fraud.

2.      *STATUTE OF LIMITATIONS*

At the outset, we address an issue we noticed during our reading of the FAC and original complaint—the statute of limitations. The statute of limitations for a fraud cause of action is three years. The cause of action accrues from the date of "the discovery, by the aggrieved party, of the facts constituting the fraud . . . ." (Code of Civ. Proc., § 338, subd. (d).) However, this tolling provision (allowing for a delay until discovery of the fraud), requires the plaintiff to plead and prove she did not make the discovery until within three years prior to the filing of the complaint. (*Samuels v. Mix* (1999) 22 Cal.4th 1, 14.)

The FAC reflects the appraisal report was prepared on August 24, 2007. Harris alleged she learned of the fraud "[a]fter closing and prior to filing the action herein." Harris's original complaint was filed on September 10, 2010. It is unclear exactly when Harris learned of the fraud. If Harris learned of the fraud shortly after the appraisal report was completed, then she has missed the statute of limitations because more than three years passed between August 24, 2007 (the date of the appraisal report) and September 10, 2010 (the date the original complaint was filed). Since it is unclear from

13

Harris's allegations if the statute of limitations was missed or met, we will address the merits of Harris's appeal.

3.    *BACKGROUND LAW*

"'A demurrer tests the legal sufficiency of the complaint . . . .' [Citations.] On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law. [Citations.] We give the complaint a reasonable interpretation, reading it as a whole and viewing its parts in context. [Citations.] We deem to be true all material facts properly pled. [Citation.] We must also accept as true those facts that may be implied or inferred from those expressly alleged. [Citation.] If no liability exists as a matter of law, we must affirm that part of the judgment sustaining the demurrer. [Citation.]" (*Trader Sports, Inc. v. City of San Leandro* (2001) 93 Cal.App.4th 37, 43.)

"The elements of fraud that will give rise to a tort action for deceit are: "'(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" [Citation.]" (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974.) "The requirements for pleading fraud in most cases is well established: ""'fraud must be pled specifically; general and conclusory allegations do not suffice. [Citations.]" (*Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1261-1262 (*Morgan*).)

14

4.      *MISREPRESENTATION*

In regard to the first element (false representation, concealment, or nondisclosure), Harris asserts the FAC set forth facts reflecting defendants (1) falsely represented there were no adverse influences affecting the property's marketability, (2) failed to disclose comparable sales that would have revealed lower property values, (3) failed to disclose information regarding the downward trend of property values across the broader real estate market, and (4) made false statements of market stability. In sum, Harris asserts there were two false statements and two failures to disclose.

Harris cites to paragraphs 24 and 25 of the FAC to support her contention. Paragraph 24 provides:  "According to Countrywide and/or its agents and employees and as stated in the appraisal report prepared by the 'approved' appraiser on August 24, 2007, there was 'no evidence of adverse influences affecting [the Property's] marketability.'"

Paragraph 25 reflects:  "After closing and prior to filing the action herein, [Harris] discovered that the appraisal was false and that the appraiser purposefully failed to consider comparable sales that would have revealed lower values, failed to disclose information pertaining to the downward trending real estate market and made false statements of market stability."

We now discuss the two false statement assertions.  The general rule requires the false statement be made to the plaintiff or directed toward the plaintiff.  (*Shapiro v. Sutherland* (1998) 64 Cal.App.4th 1534, 1547 ["it would have to have made a false statement to plaintiff"]; see also *Cohen v. Citizens Nat. Trust & Sav. Bank* (1956) 143

15

Cal.App.2d 480, 484.)  In regard to the two false statements, the problem we encounter is that the two paragraphs cited by Harris do not reflect the false statements were made to or directed at Harris.  It appears from paragraph 24 that Countrywide, its agents, or its employees made a statement in an appraisal report.  However, a lender generally owes no duty of care to a borrower in preparing a property appraisal.  (*Nymark*, *supra*, 231 Cal.App.3d at p. 1097.)  Therefore, the fact that false information may have been included in the property appraisal does not reflect a false statement was made to or directed at Harris, rather, it was made to Countrywide.

The same problem occurs with the two alleged failures to disclose information.  Harris has failed to allege that defendants had a duty to disclose the information to her.  "[T]he generally recognized rule is that absent an existing duty to volunteer information, and notice of such duty, mere failure to disclose does not constitute fraud.  [Citations.]"  (*Crayton v. Superior Court* (1985) 165 Cal.App.3d 443, 451.)  As explained in *Nymark*, a lender does not owe a duty of care to a borrower in preparing a property appraisal.  The appraisal is conducted for the purpose of allowing the lender "to ascertain the sufficiency of the collateral as security for the loan"—it is not conducted to assist the buyer.  (*Nymark*, *supra*, 231 Cal.App.3d at p. 1097.)  Therefore, (1) the law in *Nymark* reflects defendants did not have a duty to disclose information to Harris, and (2) Harris's allegations in the two paragraphs do not reflect defendants bore a duty to disclose information to Harris.

The exception to the general "no duty" rule set forth in *Nymark* is that a lender may owe a duty to a borrower with respect to an appraisal when the lender acts

16

"'*outside* the scope of the lender's conventional role in a loan transaction.'" (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 901-902.) Harris does not set forth this exception or explain how defendants acted outside their typical roles as lenders. Accordingly, any argument concerning the exception is forfeited. (*Boblitt v. Boblitt* (2010) 190 Cal.App.4th 603, 609 (*Boblitt*) [failure to provide legal argument and citations to authorities causes the issue to be forfeited]; *Advanced Choices, Inc. v. Department of Health Services* (2010) 182 Cal.App.4th 1661, 1672 (*Advanced Choices*) [same].)

We conclude the trial court properly sustained the demurrer as to the alleged false statements because the FAC fails to reflect false statements were made to Harris or directed at Harris. We conclude the trial court properly sustained the demurrer as to the alleged failures to disclose because the FAC fails to reflect defendants bore a duty to disclose the information, and the law in *Nymark* reflects defendants did not have a duty toward Harris in regard to the appraisal. Since we have concluded the first element is not met, we do not address the remaining elements.[3]

---

[3] The analysis we have conducted concerning (1) defendants not being required to disclose information to Harris, and (2) the alleged false statements not being directed at Harris, could likely also have fit within the elements of reliance or intent. We elected to conduct the analysis under the misrepresentation element because, in our view, the analysis works best within that element, where the question is whether the false statements were made to the plaintiff, and whether there was a duty to disclose information to the plaintiff, i.e., was there a misrepresentation involving the plaintiff.

Harris asserts defendants incorrectly rely upon *Nymark* because *Nymark* was decided prior to the "'mortgage crisis.'" Harris contends that since the mortgage crisis, courts have rejected the conclusion that an appraisal is conducted solely for the benefit of the lender. In support of this argument, Harris cites an opinion issued in 1981: *Larsen v. United Federal Sav. and Loan Assn. of Des Moines* (Iowa 1981) 300 N.W.2d 281. In *Larsen*, the Supreme Court of Iowa held a lender has a duty toward the borrower "with respect to the appraisal." In other words, *Larsen* came to the opposite conclusion of *Nymark*.

Harris asserts that since *Nymark* was issued before the mortgage crises, it is no longer good law. However, she supports her argument with a case that is older than *Nymark*. The fact that time has passed since a decision was issued does not mean the opinion is incorrect. Harris would need to explain why the reasoning in *Nymark* is incorrect in order to clarify why the case should not be followed. Since Harris has failed to explain why the *Nymark* analysis is flawed, we find her argument to be unpersuasive. (See generally *Ragland v. U.S. Bank Nat. Assn.* (2012) 209 Cal.App.4th 182, 205-206 [concluding there is no duty and citing to *Nymark*].)

Next, Harris contends that regardless of an appraisal being conducted solely for the lender's benefit, the lender still has a duty to provide the buyer with an accurate appraisal "under California law." Harris does not identify what law, if any, supports her assertion. Since Harris has not provided law in support of this argument, we deem the argument to be forfeited. (*Boblitt*, *supra*, 190 Cal.App.4th at p. 609; *Advanced Choices*, *supra*, 182 Cal.App.4th at p. 1672.)

## 5. *AMENDMENT*

In the alternative, Harris asserts the trial court should have granted her leave to amend the FAC.

If the defect in the complaint can be cured by amendment, then the judgment of dismissal must be reversed to allow the plaintiff an opportunity to amend. "The plaintiff bears the burden of demonstrating a reasonable possibility to cure any defect by amendment. [Citations.] A trial court abuses its discretion if it sustains a demurrer without leave to amend when the plaintiff shows a reasonable possibility to cure any defect by amendment. [Citations.] If the plaintiff cannot show an abuse of discretion, the trial court's order sustaining the demurrer without leave to amend must be affirmed. [Citation.]" (*Traders Sports, Inc. v. City of San Leandro*, *supra*, 93 Cal.App.4th at pp. 43-44.)

In her appellant's opening brief, Harris does not provide any detail regarding how she would amend the FAC to cure the defects. However, from the documents at the lower court and arguments in her appellant's reply brief, we infer Harris would amend the FAC to reflect an employee of Countrywide, West, told Harris that if the property appraised for less than the agreed-upon purchase price, then Harris would not be obligated to purchase the property. Harris would further allege Countrywide owed a duty to Harris in the preparation of the appraisal, based upon the foregoing statement by West.

The problem with this proposed amendment is that it does not create an inference that Countrywide owed a duty to Harris in the preparation of the appraisal. Rather, the

19

logical inference to be made from West's statement is that if the appraisal reflected the property were worth less than the purchase price that Harris had already agreed upon with Shea, then her requested loan amount would not be fully funded by Countrywide (because the property was not found to be adequate security for the loan), and therefore, Harris would be able to cancel the purchase agreement because she would not have sufficient funds to proceed with the agreement.

In other words, the statement does not create an inference of a duty owed by Countrywide to Harris. Rather, West's statement further supports the conclusion that the appraisal was conducted only for the lender's benefit—for the lender to determine if the property was adequate security, because if it were inadequate, the loan would not be fully funded. There is nothing in the proposed amendment that would cure the defects in the FAC. Harris has still failed to show (1) the alleged false statements were made to her or directed at her, and (2) defendants had a duty to volunteer information to Harris.

There is a rule regarding indirect deception, which provides a defendant may be liable for false statements that are not made directly to the plaintiff, but which are made to a third person and the speaker/writer of the statement intends or has reason to expect that the substance of the misrepresentation will be communicated to the plaintiff and that the misrepresentation will influence her conduct in the transaction at issue. (*Geernaert v. Mitchell* (1995) 31 Cal.App.4th 601, 605-606.)

When applying the indirect deception rule, the same problem described *ante*, appears. West's statement does not reflect an intent or expectation for Harris to be influenced by the appraisal. Rather, the logical inference from West's statement is that

20

Harris would be able to cancel the purchase agreement because she would not have sufficient funds after *Countrywide* relied upon (or was influenced by) the appraisal and possibly refused to fully fund the loan for the purchase price that Harris had already agreed upon, thus leaving Harris without the funds to complete the transaction. In other words the logical inference from West's statement and the allegations in the FAC do not reflect the information in the appraisal was meant to indirectly influence Harris. Accordingly, we conclude the trial court did not err by denying Harris leave to amend on the combined fraud and misrepresentation causes of action because Harris has not show the statements were (1) made to her, (2) directed toward her, or (3) designed to indirectly influence her.

> B.    SECTION 17200

>> 1.    *CONTENTION*

Harris contends the trial court erred by sustaining the demurrer because the FAC states a cause of action for unlawful, unfair, or fraudulent business practices. (§ 17200.)

>> 2.    *BACKGROUND LAW*

Section 17200 et seq. is known as the Unfair Competition Law (UCL). (*Morgan*, *supra*, 177 Cal.App.4th at p. 1240.) "The UCL outlaws as unfair competition 'any unlawful, unfair or fraudulent business act or practice . . . . Because the statute is framed in the disjunctive, a business practice need only meet one of the three criteria to be considered unfair competition. [Citation.]' [Citation.]" (*Id.* at p. 1253.)

21

### 3. *UNLAWFUL BUSINESS PRACTICE*

Harris contends the FAC sets forth a cause of action for an unlawful business practice. In particular, Harris asserts the FAC reflects defendants violated Civil Code section 1090.5.

"An unlawful business practice under the UCL is """"anything that can properly be called a business practice and that at the same time is forbidden by law.""""" [Citation]." (*Morgan*, *supra*, 177 Cal.App.4th at p. 1254.) Civil Code section 1090.5, subdivision (a) provides, in relevant part: "No person with an interest in a real estate transaction involving a valuation shall improperly influence or attempt to improperly influence the development, reporting, result, or review of that valuation, through coercion, extortion, bribery, intimidation, compensation, or instruction."

Defendants assert they did not have an interest in Harris's real estate transaction. However, defendants fail to define the phrase "'[a] person with an interest in a real estate transaction.'" Rather, they merely assert Harris has failed to show defendants had the required interest, whatever those requirements may be. Harris does not explain how or why defendants had an interest in the real estate transaction. Rather, Harris simply asserts defendants "had an interest in [Harris's] real estate transaction." No explanation or legal definition of the phrase is provided.

The issue presented is: Does a lender qualify as an interested person in a real estate transaction. The parties have provided differing conclusions without law or legal analysis in support of their conclusions. Since the parties have not provided any law on what it means to be a "person with an interest in a real estate transaction," and have not

22

provided any legal argument on this point, we cannot determine whether defendants meet the statutory requirements. As a result, we deem this issue forfeited for failure to provide law and legal arguments. (*Boblitt*, *supra*, 190 Cal.App.4th at p. 609; *Advanced Choices*, *supra*, 182 Cal.App.4th at p. 1672.)

### 4.   *FRAUDULENT BUSINESS PRACTICE*

Harris contends the trial court erred by sustaining the demurrer in regard to her allegations of a fraudulent business practice because UCL-fraud claims do not have to be pled with the specificity of common law fraud claims. Harris is correct that UCL fraud claims can properly be pled with less specificity than a common law fraud claim. (*Committee on Children's Television, Inc. v. General Foods Corp.*, *supra*, 35 Cal.3d at pp. 212-213; *Morgan*, *supra*, 177 Cal.App.4th at p. 1256.) However, Harris fails to explain how, under the UCL, she has properly pled a cause of action for fraudulent business practices. The law reflecting that the pleading requirements are diminished does not repair the deficiencies in Harris's FAC. Since Harris fails to provide a legal argument regarding how her UCL-fraud allegations are sufficient, we deem the issue to be forfeited. (*Boblitt*, *supra*, 190 Cal.App.4th at p. 609; *Advanced Choices*, *supra*, 182 Cal.App.4th at p. 1672.)

### 5.   *UNFAIR BUSINESS PRACTICE*

Next, Harris asserts the FAC sets forth facts sufficient to support a cause of action for an unfair business practice. Specifically, Harris contends the FAC reflects an unfair business practice because defendants (1) improperly influenced appraisers to inflate property values, (2) improperly influenced appraisers to prepare appraisals that

23

were tainted with false and misleading information, (3) used appraisers who did not disclose information that would have reflected lower property values and market instability, and (4) violated regulatory standards for professional appraisers.

There is currently a split of authority concerning the definition of an unfair business practice. (*Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1376, fn. 14; *Morgan*, *supra*, 177 Cal.App.4th at pp. 1254-1255.) "Before 1999, some Courts of Appeal held that 'an "unfair" business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers' [citations], while others held that the determination whether a practice is unfair 'involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer' [citations].

"In 1999, the Supreme Court defined 'unfair' in the context of a UCL action by one competitor against a direct competitor, stating that 'any finding of unfairness to competitors under [the UCL must] be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition.' [(*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 186-187.)] But the Supreme Court also made clear that its discussion about 'unfair' practices was limited to actions by competitors alleging anticompetitive practices, and did not relate to actions by consumers. [Citation.] Nevertheless, some courts of appeal have applied the *Cel-Tech* definition of 'unfair' to consumer actions [citations], while others . . . have applied the old definitions [citations]. . . . [I]n *Camacho v. Automobile*

*Club of Southern California* (2006) 142 Cal.App.4th 1394, a consumer action, Division Eight of [the Second] [A]ppellate [D]istrict rejected both definitions and instead applied a definition based upon section 5 of the Federal Trade Commission Act [citation]. Under the definition in *Camacho*, a practice is unfair if (1) the consumer injury is substantial, (2) the injury is not outweighed by any countervailing benefits to consumers or competition, and (3) the injury is one that consumers themselves could not reasonably have avoided. [Citation.]" (*Morgan*, *supra*, 177 Cal.App.4th at pp. 1254-1255.)

In Harris's appellant's opening brief, she cites both pre-1999 rules: (1) the determination of an unfair practice involves examining the practice's impact on the alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer (*Motors, Inc. v. Times Mirror Co.* (1980) 102 Cal.App.3d 735, 740 [Second Dist., Div. Five]); and (2) the determination requires examining whether the practice offends an established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers (*People v. Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509, 530 [Fourth Dist., Div. One]). (See *Morgan*, *supra*, 177 Cal.App.4th at pp. 1254 [discussing the different rules in *Motors* and *Casa Blanca*].)

Harris does not reconcile the rules or explain which of the two pre-1999 rules she would like this court to follow. Harris does not discuss *Cel-Tech* or present the split in authority following the *Cel-Tech* decision in 1999. Since Harris presents two different pre-1999 rules, without legal argument concerning which rule is correct, we determine

this issue has been forfeited, because we cannot analyze the issue unless we know which rule of law to apply. (*Boblitt*, *supra*, 190 Cal.App.4th at p. 609; *Advanced Choices*, *supra*, 182 Cal.App.4th at p. 1672.)

####    6.    *AMENDMENT*

In the alternative, Harris asserts the trial court should have granted her leave to amend her fourth cause of action. Harris does not provide any information regarding how she would amend the FAC. (See *Holcomb v. Wells Fargo Bank, N.A.* (2007) 155 Cal.App.4th 490, 495 ["'Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading'"].) Accordingly, we conclude the issue has been forfeited for failure to provide a legal argument. (*Boblitt*, *supra*, 190 Cal.App.4th at p. 609; *Advanced Choices*, *supra*, 182 Cal.App.4th at p. 1672.)

###    C.    TENDER

Defendants assert Harris's request for injunctive relief fails because a person must offer to tender the amount due on the mortgage in order to successfully have a court rescind a mortgage and issue an injunction stopping a trustee's sale. (Civ. Code, § 2905.) Harris's request for injunctive relief was made in connection with the fourth cause of action—the alleged violation of Business and Professions Code section 17200. We have not found an error in the trial court's order sustaining the demurrer without leave to amend, which includes the fourth cause of action. Therefore, we do not analyze this issue because it is moot, in that we have already concluded the trial court properly

dismissed the fourth cause of action.  (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1215 [an issue is moot when no effective relief can be granted].)

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RICHLI
Acting P. J.

CODRINGTON
J.